RECEIVED

JUN - 9 2011

TONY R. MOORE, CLERK
BY_____
     DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| KENDALE SMITH | CIVIL ACTION NO: 09-1614 |
| VERSUS | JUDGE DONALD E. WALTER |
| CARTER, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment [Doc. #21] filed by the Defendants Webster Parish Sheriff's Office ("WPSO") through its Sheriff, Gary S. Sexton, Deputy Gary Carter, Deputy John Sides, and Deputy Danny Couch. Plaintiff, Kendale Smith, opposes this motion. [Doc. #34]. Upon due consideration, Defendants' Motion for Summary Judgment [Doc.#21] is **GRANTED IN PART**. Plaintiff's claims for violations of the Eighth Amendment of the Constitution under 42 U.S.C. § 1983 are **DISMISSED WITH PREJUDICE**. Having dismissed Plaintiff's federal claims, and pursuant to 28 U.S.C. § 1367(c), the Court declines to retain jurisdiction over Plaintiff's state law claims, which are hereby **DISMISSED WITHOUT PREJUDICE**.

## FACTUAL BACKGROUND

On or about September 22, 2008, Plaintiff was arrested for a parole violation and was ordered to complete his original sentence for a previous offense. [Doc. #21, Ex. A, Bates #002]. Plaintiff was taken to the Bayou Dorcheat Correctional Center in Webster Parish, Louisiana, where he was given a medical screening as part of the admission process. As part of that process the Plaintiff informed the screening officer that he took medication for a kidney problem, but could not provide the officer with the name of his medication or any other details regarding his kidney condition. [Doc.

#21, Ex. A, Bates #009]. The medical screening report notes that Plaintiff stated he had only one kidney, but that a later phone call to Plaintiff's mother indicated that was not the case. *Id.* Plaintiff was told to call his mother and have her bring in his medication to the correctional facility. *Id.* According to the chart his mother never provided the medication. *Id.*

After processing, Plaintiff was placed in a holding cell and was later transferred to a dormitory. On Wednesday, October 1, 2008, at 5 p.m., Plaintiff made a request for a medical evaluation. [Doc. #21, Ex. A, Bates #007]. He was evaluated by a nurse the next morning, Thursday, October 2, 2008, at 9:30 a.m. During his evaluation Plaintiff reported that he is a "kidney diabetic" and that he must drink 2 gallons of liquid every 4 hours - either water or cold drinks. *Id.* The report notes that water is continuously available in his cell, but that Plaintiff was not drinking what he needed because he did not like the taste of the water. *Id.* The nurse instructed Plaintiff to increase his water intake, but he responded by stating that the water in his cell appeared contaminated, he did not like the taste, and he was not going to drink the water. [Doc. #21, Ex. A, Affidavit of Sherry Bagwell]. Plaintiff told the nurse that he needed bottled water on ice. *Id.* The Court notes that the Department of Health issued an inspection report dated December 2, 2008, that indicates the availability of safe drinking water in each cell. [Doc. #21, Ex. A, Bates #001].

A urinalysis performed during Plaintiff's initial appointment was normal with the exception of a moderately positive indicator of blood in his urine. *Id.* A follow-up appointment was scheduled for Plaintiff to be evaluated by the facility doctor on Monday, October 6, 2008, the next scheduled date the doctor would visit the prison. That same day, October 2, 2008, the medical staff faxed a medical records request to Louisiana State University Health Sciences Center ("LSUHSC"), where Plaintiff had been previously treated, to obtain Plaintiff's medical history. [Doc. #21, Ex. A, Bates #010].

On Friday, October 3, 2008, at 9:45 a.m., Plaintiff was evaluated a second time by a nurse in the medical unit. [Doc. #21, Ex. A, Bates #006]. The report states that Plaintiff reported feeling weaker than the previous day. *Id.* The nurse noted that Plaintiff appeared much weaker. *Id.* Plaintiff reported that his legs were hurting and that it was difficult for him to walk. *Id.* Plaintiff informed the nurse that he had not been drinking the water because he did not like the taste. *Id.* The nurse told Plaintiff to drink more water and provided Tylenol for the leg pain. *Id.* The nurse's treatment plan was consisted of allowing Plaintiff to be evaluated by the doctor on Monday as previously scheduled. *Id.*

Later that morning the nurse received a phone call from a deputy who indicated that Plaintiff was unable to stand without assistance. [Doc. #21, Ex. B, Affidavit of Autumn Walker]. Transport was immediately notified and Plaintiff was taken to LSUHSC's emergency room for evaluation and treatment. *Id.* Plaintiff had become dehydrated. [Doc. #21, Ex. A, Affidavit of Sherry Bagwell]. He was admitted to the MICU at LSUHSC for lethargy and hypernatremia. [Doc. #34, Ex. B]. On October 28, 2008, Plaintiff was discharged from LSUHSC back to the custody of the prison with instructions to drink water. *Id.* Plaintiff was released from jail shortly thereafter on November 3, 2008. [Doc. #21, Ex. A, Affidavit of Sherry Bagwell].

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] A fact is "material" if it may affect the outcome of the suit under

---

[1] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this court will rely on it accordingly.

3

governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. *Id.* The court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mutual Auto Insurance Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

The moving party bears the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lawrence v. Univ. of Texas Medical Branch at Galveston*, 163 F.3d 309 (5th Cir. 1999). The moving party need not produce evidence to negate the elements of the non-moving party's case, but need only point out the absence of evidence supporting the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325; *Lawrence*, 163 F.3d at 311.

Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine dispute as to a material fact. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted).

## LAW AND ANALYSIS

Plaintiff filed suit against three deputies employed by the WPSO in their individual capacities: Gary Carter, John Sides, and Danny Couch. [Doc. #1 at 2]. Plaintiff also named Gary

Sexton, Sheriff of Webster Parish, as a Defendant in his official capacity. *Id.* The Defendants have plead the defense of qualified immunity. [Doc. #8].

A defense of qualified immunity alters the usual summary judgment burden of proof by shifting the burden back to plaintiff who "must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citing *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005)). The Plaintiff bears the burden of negating qualified immunity, however, all inferences are drawn in his favor. *Id.*

Qualified immunity has two prongs that must be satisfied in the affirmative to negate the defense: (1) whether the official's conduct violated a constitutional right of the plaintiff, and (2) whether the constitution right was clearly established at the time of the alleged violation. *Brown*, 623 F.3d at 253 (citing *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009)).

Even if a plaintiff proves a violation a constitutional right, the Court must ask "whether qualified immunity is still appropriate because the defendant's actions were objectively reasonable in light of law which was clearly established at the time of the disputed action." *Brown*, 623 F.3d at 253 (citing *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004)). For qualified immunity purposes, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Brown*, 623 F.3d at 253 (citing *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008)). "An official's actions must be judged in light of the circumstances that confronted him, without the benefit of hindsight." *Brown*, 623 F.3d at 253 (citing *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)). "In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper." *Brown*, 623

F.3d at 253 (citing *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)).

The Eighth Amendment of the Constitution, which applies to the states through the Due Process Clause of the Fourteenth Amendment, prohibits the "cruel and unusual punishment" of prisoners and places certain restraints on prison officials who may not use excessive force against prisoners. *Hudson v. McMillian*, 503 U.S. 1 (1992). "The Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825 (1984) (internal quotation and citation omitted).

Prison officials violate the Eighth Amendment's prohibition against cruel and unusual punishment if they demonstrate deliberate indifference to a prisoner's serious medical needs, such that it constitutes an "unnecessary and wanton infliction of pain." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (citation omitted). A serious medical need is one "for which treatment has been recommended or for which the need is so apparent that even a laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 399, 345 (5th Cir. 2006) (citation omitted).

The standard for demonstrating deliberate indifference is "extremely high to meet". *Id.* at 346. The analysis is two-fold. First Plaintiff must prove an objective exposure to a substantial risk of serious harm. *Id.* Second, Plaintiff must show that prison officials acted or failed to act with deliberate indifference to that risk. *Id.* Deliberate indifference is apparent only if (1) the prison official knows that an inmate faces a substantial risk of serious bodily harm and (2) he disregards the risk by failing to take reasonable measures to abate it. *Gobert*, 463 F.3d at 346 (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1970)).

6

"Unsuccessful medical treatments, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346 (citations omitted). "The decision whether to provide additional treatment is a classic example of matter for medical judgment." *Gobert*, 463 F.3d at 346 (citing *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). "A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evidence a wanton disregard for any serious medical needs." *Id.* (internal quotations omitted).

<u>Claims against the Deputies in their Individual Capacities</u>

Plaintiff alleges that the deputies showed a deliberate indifference towards him because they were aware of his medical condition, yet denied him access to additional water by subjecting him to the same water rations as every other prisoner. [Doc. #1 at 4]. Plaintiff alleges that the deputies denied his request for medical care and water despite his obvious physical deterioration. [*Id.* at 5]. Specifically, Plaintiff stated in his deposition that he asked the guards for medical care beginning September 26, 2008, but that the guards responded by cursing at him and threatening to break his finger. [Doc. #34, Ex. A]. Plaintiff stated that the guards told him that he would have to fill out a piece of paper to receive medical care, but that it took two to three days to get the form. *Id.* Plaintiff also claims that the guards repeatedly denied his request for additional water. *Id.*

The first prong of the test for deliberate indifference requires the Plaintiff to prove an objective exposure to a substantial risk of serious harm. Given the alleged nature of Plaintiff's medical condition, the Court will assume that this prong is met for the remainder of the analysis.

The second prong requires that the Plaintiff demonstrate that the prison officials knew that he faced a substantial risk of bodily harm and disregarded the risk by failing to take reasonable measures to abate it. *Gobert v. Caldwell*, 463 F.3d. at 346. Even if the Court assumes that Plaintiff's allegations are true, the second prong of the deliberate indifference test is not met. There is no indication that the deputies were aware of Plaintiff's medical condition, much less that they knew that Plaintiff could face a serious risk of harm if he were to become dehydrated. The deputies ultimately delivered Plaintiff's request for medical attention to the medical unit as evidence by his October 2, 2008 evaluation. Further, when the deputies became aware that Plaintiff was suffering from an acute medical condition, only a few hours after his last appointment with the medical team, they reported this information to the medical team as required under the prison's medical policy. [Doc. #21, Ex. A, Bates #006; Ex. D].

The heart of Plaintiff's complaint lies in the alleged failure of prison officials to provide copious amounts of water sufficient to properly treat his existing medical condition. It appears to this Court that the liability, if any, would lie against the members of the medical team who sent Plaintiff back to his cell with instructions to drink more of the water available to Plaintiff in his cell despite noting that Plaintiff did not like the taste of the water and even referred to it as contaminated. [Doc. #21, Ex. A, Bates #007]. The medical treatment policy of the prison limits how a guard may act with respect to the medical treatment of prisoners. Specifically, the policy states that "corrections officers will not interfere with, furnish medical treatment, or advice other than life saving common sense judgments." [Doc. #21, Ex. D]. Further, the officers are required under the policy to "follow the instructions provided by the medical provider." *Id.*

It was a nurse who noted in Plaintiff's chart the morning he was hospitalized that Plaintiff

appeared "much weaker" than the day before. [*Id.* at Bates #006]. Yet, despite his noted deteriorating condition, the nurse sent Plaintiff back to his cell with Tylenol for leg pain and instructions to increase fluid intake. *Id.* Assuming *arguendo* that Plaintiff was becoming critically dehydrated on the morning of October 3, 2008, he was evaluated by a member of the medical staff who declined to provide additional treatment. The fact that Plaintiff was evaluated by the medical team the same morning he was ultimately transported to LSUHSC undercuts Plaintiff's claims that the guards acted with deliberate indifference.

The medical records indicate that the medical team was unclear about the details and seriousness of Plaintiff's condition. As such, it is a stretch to expect the deputies to have knowledge of Plaintiff's specific medical problems, much less the protocol for administering the appropriate treatment of his condition. There is no evidence that the guards were informed of Plaintiff's condition by the medical team or instructed to provide additional water as a necessary part of his medical treatment.

Therefore, it is the finding of the Court that the individual Defendants named in the Complaint did not act with deliberate indifference, and therefore, did not violate the Eighth Amendment of the Constitution. This finding also shields the individual Defendants from liability under the qualified immunity doctrine. Accordingly, Plaintiff's claims against the Defendants Deputy Gary Carter, Deputy John Sides, and Deputy Danny Couch are dismissed with prejudice.

<u>Claims against Sheriff Gary Sexton and the Webster Parish Sheriff's Office</u>

Plaintiff also makes a claim against the WPSO through Gary Sexton, Sheriff. Plaintiff states that the actions of the individual deputies were in accordance with a custom or practice of the WPSO, and that the WPSO had a custom and practice of ignoring and/or failing to treat the medical

issues of inmates as required by the Constitution. [Doc. #1 at 8].

A municipality cannot be held liable under 42 U.S.C. § 1983 on the theory of respondeat superior. *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Liability requires either an unconstitutional action of a municipal policymaker or an unconstitutional municipal policy. *Turner v. Upton County Texas*, 915 F.2d 133, 136 (5th Cir. 1990). "A municipal policy may consist of: (1) a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers[]; or (2) a persistent, widespread practice of city officials or employees, which although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority." *Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004) (citing *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992)).

Defendant Gary Sexton, as Sheriff of the WPSO, states in an affidavit that he was not personally involved in the incarceration or medical treatment of the Plaintiff. [Doc. #21, Ex. D]. Further, Sheriff Sexton states that he is unaware of any policy, practice or custom of the correction center which violates a prisoner's constitutional rights. *Id.* Attached to the affidavit is a copy of the official policy for the medical treatment of inmates. [Doc. #21, Ex. D]. The policy sets forth that a corrections officer is to provide an "inmate medical evaluation" form when a prisoner asks for medical care. *Id.* The policy also sets forth the procedures that corrections officers should follow in an emergency medical situation, including the requirement that a corrections officer obtain immediate assistance when a medical emergency becomes apparent. *Id.*

Plaintiff has presented no evidence to support a genuine dispute as to material fact on this issue. Rather, Plaintiff merely asserts in his Complaint that the individual deputies acted "in accordance with a custom or practice of WPSO, in that WPSO had a custom and practice of ignoring medical issues of inmates of WPSO and of failing to treat inmates of WPSO as required by the Constitution of the United States[]." [Doc. #1 at 8]. This allegation, without further support, is insufficient to overcome the qualified immunity defense. As such, Plaintiff's 42 U.S.C. § 1983 claims against Gary Sexton in his official capacity are dismissed with prejudice.

## CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment [Doc.#21] is **GRANTED IN PART.** Plaintiff's 42 U.S.C. § 1983 are **DISMISSED WITH PREJUDICE.** Having dismissed all of Plaintiff's federal claims, and pursuant to 28 U.S.C. § 1367(c), the Court declines to retain jurisdiction over Plaintiff's state law claims, which are hereby **DISMISSED WITHOUT PREJUDICE.**

**THUS DONE AND SIGNED**, this ____ day of June, 2011.

DONALD E. WALTER
UNTIED STATES DISTRICT JUDGE